IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MEG HENSON SCALES,              )
                                )
          Plaintiff,            )
                                )
     v.                         )    1:15CV192
                                )
CHAUNESTI WEBB and              )
MANBITES DOG THEATER COMPANY,   )
                                )
          Defendants.           )
```

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Presently before this court is a Motion to Dismiss Amended Complaint and for Judgment on the Pleadings filed by Defendant Chaunesti Webb ("Defendant Webb"). (Doc. 23.) Plaintiff Meg Henson Scales ("Plaintiff") has filed a response, (Doc. 29), and Defendant has replied. (Doc. 33.) This matter is now ripe for resolution, and for the reasons stated herein, Defendant's Motion to Dismiss will be denied.

I. **PROCEDURAL HISTORY**

Plaintiff filed her initial complaint on March 3, 2015. (Doc. 1.) Defendant Manbites Dog Theater Company ("Defendant Manbites Dog") filed an Answer and Defenses on April 9, 2015, (Doc. 8), and Defendant Webb, after several Motions for Extension of Time, filed a Motion to Dismiss and an Answer on

June 1, 2015. (Docs. 10, 11, 13, 14, 15.) Plaintiff then filed an Amended Complaint on June 25, 2015. (Doc. 19.) Defendant Manbites Dog filed an Answer and Defenses to the Amended Complaint on July 13, 2015 (Doc. 22), and Defendant Webb filed an Answer and the instant Motion to Dismiss Amended Complaint and for Judgment on the Pleadings on the same day. (See Docs. 23, 24.) Defendant Webb's Briefing is now complete on the motion.[1]

**II. BACKGROUND**

Plaintiff is a resident of New York City and author of a 1995 essay titled "Tenderheaded: Or, Rejecting the Legacy of Being Able to Take It," ("Tenderheaded"). (Amended Complaint ("Am. Compl.") (Doc. 19) ¶¶ 8, 11.) According to Plaintiff, the essay uses Plaintiff's childhood memories and the history of the Civil Rights movement to criticize what Plaintiff refers to as "strongblackwoman," which is a "pain-enduring, self-denying 'anti-hero' who is 'culturally valued in direct proportion to her personal sacrifice.'" (Id. ¶ 11.) Plaintiff's essay was published in 2001 by Simon & Schuster as the title essay in an

---

[1] On July 16, 2015, Magistrate Judge Joi Elizabeth Peake entered an order terminating as moot Defendant Webb's original Motion to Dismiss as a result of the filing of the Amended Complaint. (Doc. 27.)

anthology entitled: "Tenderheaded: A Comb-Bending Collection of Hair Stories" ("the anthology"). (Id. ¶ 12.) The anthology was copyrighted on March 23, 2001, and Plaintiff copyrighted her individual essay on May 2, 2012. (Id. ¶¶ 14-15.) Defendant Webb allegedly obtained and read a copy of Tenderheaded at some point prior to March of 2012 (Id. ¶ 16.)

Defendant Webb completed a play entitled "I Love My Hair When It's Good: & Then Again When It Looks Defiant and Impressive" ("I Love My Hair") sometime on or about March 8, 2012, allegedly copying several passages from Tenderheaded directly into her script. (Id. ¶¶ 17-18.)

Defendant Webb put on a performance run of the play at Defendant Manbites Dog's theater between March 8 and March 17, 2012, selling out each night the play was performed. (Am. Compl. ¶¶ 25-26.) After this run of performances, Defendant Webb emailed Plaintiff to request permission to use sections of Tenderheaded, which Plaintiff denied, requesting that Defendant not use her work. (Id. ¶¶ 30-32.) After this exchange, a revised version of "I Love My Hair" was again performed at Manbites Dog Theater, between January 17 and February 1, 2014. (Id. ¶ 36.)

## III. ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible provided the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party, and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. Under Iqbal,

the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). Iqbal, 556 U.S. at 681. Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." Id. "At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor." Estate of Williams-Moore, 335 F. Supp. 2d at 646.

The same standard should be applied for motions under Federal Rule of Civil Procedure 12(c) as for motions pursuant to Rule 12(b)(6). Indep. News, Inc. v. City of Charlotte, 568 F.3d 148, 154 (4th Cir. 2009) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

## A. Copyright Infringement

Plaintiff alleges a single claim of copyright infringement.[2] Copyright protection extends to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). A copyright holder has certain exclusive rights to the work, including the right to reproduce all or any part of the copyrighted work. 17 U.S.C. § 106. To prove copyright infringement, a plaintiff must show first, that she owned the copyright to the work that was allegedly copied, and second, that the defendant copied protected elements of that work that were original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). As Defendant Webb concedes, Plaintiff's allegation that she owned a valid copyright to Tenderheaded must be taken as true at this stage of the proceedings. (See Def.' Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Doc. 25) at

---

[2] The court notes that, although Plaintiff's complaint at least suggests infringement by Plaintiff's Master's Thesis as well as both the 2012 and 2014 versions of the play, only a single count of copyright infringement is alleged. (See Am. Compl. (Doc. 19).) Defendant Webb responds, and Plaintiff apparently does not contest, that her Master's Thesis does not contain the play at issue, and that the 2014 version of "I Love My Hair" removed all allegedly copied material. As such, the court will limit its discussion of infringement to the 2012 version of the play, as there appears to be no disagreement that neither the Thesis nor the 2014 version of the play infringe.

- 6 -

4.)  As such, the relevant inquiry is as to whether Defendant copied protected elements of Tenderheaded.

A plaintiff may prove the second element — that the protected elements of the plaintiff's work were copied — through either direct or circumstantial evidence. See, e.g., M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 445 (4th Cir. 1986).  Here, in contrast to most copyright infringement cases, Defendant Webb apparently admits that certain verbatim passages from Plaintiff's essay appear in the 2012 version of her play "I Love My Hair." (See Def.'s Answer to First Am. Compl. (Doc. 24) ¶ 18.)  However, the second step of the inquiry requires not only a showing that a defendant copied a plaintiff's work, but that the defendant also copied "protected elements" of the plaintiff's work. Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 143 (4th Cir. 2000).

In the context of a copyright infringement claim, whether the copied elements of a work are protected is particularly important because "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected." Feist Publ'ns, 499 U.S. at 348. Rather, copyright protection extends "only to those components of a work that are original to the author." Id.  As such, even if a work is fact based, if an

author "clothes facts with an original collocation of words, he or she may be able to claim a copyright in this written expression. Others may copy the underlying facts from the publication, but not the precise words used to present them." Id.

Defendant contends that because Plaintiff's essay is nonfiction, and that the "'plot elements' it recounts are no more than autobiography," that these elements, as facts, are not protectable under copyright law. (See Def.'s Mem. (Doc. 25) at 13.) Plaintiff responds that while certain facts from Plaintiff's life are incorporated into the work, it is the manner and style in which they are incorporated and used throughout the essay that is original and entitled to copyright protection. (See Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.")(Doc. 29) at 7.)

Plaintiff is correct that simply because a work is nonfiction does not mean that it is either non-original, or not entitled to copyright protection. See Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 547 (1985) (acknowledging a copyright for the memoirs of President Ford, and holding that "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality"). As such, Defendant Webb's

allegations that Plaintiff's essay is not entitled to copyright protection simply by virtue of being nonfiction is legally incorrect.

Plaintiff here alleges, and Defendant Webb apparently concedes, that the play "I Love My Hair" contains entire phrases, taken verbatim, from Plaintiff's essay, such as "me between her legs, clasping her knees, facing out, a sotto voice hugging takes place, nice, if not wonderful," the phrase "strongblackwoman," and the entire last act of the 2012 version of Defendant Webb's play. (Am. Compl. (Doc. 19) ¶¶ 18-19.) Such expressions are not merely the underlying historical or autobiographical fact, which Defendant Webb would be free to use, but rather, Plaintiff's own unique recounting and description of events. As stated in Feist Publications, when Plaintiff, as she has here, "clothes facts with an original collocation of words," those words are entitled to protection. 499 U.S. at 348. As Plaintiff has sufficiently alleged that

those original words were copied, Plaintiff has alleged enough at this stage to plausibly allege copyright infringement.[3]

**B.  Fair Use**

Defendant also contends that, even if the court finds that protected elements of Plaintiff's copyrighted work were copied, that her use of those elements was permissible under the doctrine of Fair Use. (See Def.'s Mem. (Doc. 25) at 14-19.)

---

[3] The court notes that Plaintiff's complaint requests statutory damages. (See Am. Compl. (Doc. 19) at 10.)  Although this court will not rule on the issue at this time, it notes that it does not appear at this point that Plaintiff is entitled to statutory damages. By statute, such damages are not available for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration." 17 U.S.C. § 412(2). Here, Plaintiff did not register for copyright protection until May of 2012, after the alleged infringement occurred.  Plaintiff contends that the registration of copyright for the anthology, published in 2001, suffices to trigger statutory damages for Defendant's infringement.  However, it is Fourth Circuit law that, absent proof of joint ownership, the authors of collective works are presumed not to own the copyright in the component parts of a published collection of works.  See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc., 722 F.3d 591, 596 (4th Cir. 2013). Further, the 2001 copyright for the anthology specifically notes that it extends only to "new matter" in the anthology, such as photos, illustrations, and the compilation itself. (See Am. Compl., Ex. D, 2001 Anthology Copyright (Doc. 19-4).)  As such, because Plaintiff's copyright was not registered until May of 2012, after the alleged dates of infringement, she does not appear to qualify for statutory damages. These issues will have to be fully addressed at a later stage of these proceedings.

The Copyright Act provides that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. "A 'fair use' defense is by its nature very fact-specific, because in deciding the issue a court must delve into issues such as the purpose and character of the use, the amount of the portion used in relation to the copyrighted work as a whole, and the effect of the use on the market for the copyrighted work." Red Bull GmbH v. RLED, LLC, 515 F. Supp. 2d 641, 648 (M.D.N.C. 2007) (citing Bond v. Blum, 317 F.3d 385, 394 (4th Cir. 2003). Whether a given use of copyrighted material is "fair" requires a case-by-case analysis in which the statutory factors are not "treated in isolation" but are "weighed together, in light of the purposes of copyright." Campbell v. Acuff–Rose Music, Inc., 510 U.S. 569, 578 (1994).

As fair use is an affirmative defense to copyright infringement, the burden is on the defendant to prove fair use. Id. at 590. Affirmative defenses may be considered at the motion to dismiss stage only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are

- 11 -

alleged in the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). The court may consider such a defense in a motion under Rule 12(b)(6) only when "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Id. (citing Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).

Here, Defendant has not shown that this affirmative defense is clearly established on the face of the complaint. In order to show fair use, Defendant must establish that the use was fair in light of four factors:

   (1)  the purpose and character of the use, including
        whether such use is of a commercial nature or is
        for nonprofit educational purposes;

   (2)  the nature of the copyrighted work;

   (3)  the amount and substantiality of the portion used
        in relation to the copyrighted work as a whole;
        and

   (4)  the effect of the use upon the potential market
        for or value of the copyrighted work.

17 U.S.C. § 107.

Given fact-intensive nature of the fair use defense, and the requisite balancing of factors it involves, this court finds that at this point in the litigation, it is simply premature to consider whether Defendant Webb's use of Plaintiff's copyrighted

work could be considered "fair use" for purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[4]

As noted above, the facts necessary to establish the defense for purposes of 12(b)(6) must appear on the face of the complaint. Goodman, 494 F.3d at 464. However, unlike a Rule 12(b)(6) motion, on a Rule 12(c) motion the court may consider the Answer as well. Rinaldi v. CCX, Inc., No. 3:05-CV-108-RJC, 2008 WL 2622971, at *2 n.3 (W.D.N.C. July 2, 2008.) The factual allegations in the Answer are taken as true "only where and to the extent they have not been denied or do not conflict with the complaint." Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991). "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983). "For the purposes of this motion Defendant cannot rely on allegations of fact contained only in the answer,

---

[4] The court notes, for example, that the Amended Complaint alleges commercial use by Defendant, as well as the direct copying of "numerous" passages, weighing against a finding of fair use, and further supporting a finding that such a defense cannot be established on the face of the Amended Complaint. (See Am. Compl. (Doc. 19) at ¶¶ 18-20, 26, 29, 37.)

including affirmative defenses, which contradict [the] complaint" because "Plaintiffs were not required to reply to [the] answer, and all allegations in the answer are deemed denied." Jadoff, 140 F.R.D. at 332.

Just as with the 12(b)(6) motion, the court finds that Defendant's 12(c) motion is simply premature at this stage. Defendant's affirmative defense of fair use clearly contradicts the facts alleged in the Amended Complaint, and the court cannot resolve those factual issues on this record for purposes of a 12(c) motion. Given that factual issues are to be resolved in favor of Plaintiff, Defendant's 12(c) motion must necessarily fail.

Accordingly, the court will not dismiss Plaintiff's claim at this stage based upon Defendant's alleged "fair use" defense under either Rule 12(b)(6) or 12(c).

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Amended Complaint and for Judgment on the Pleadings (Doc. 23) is **DENIED**.

This the 30th day of March, 2016.

_____
United States District Judge